**UNITED STATES of America**

v.

**Jerome TOLSON, Defendant.**

**Crim. Action No. 93–0055–02 (JHG).**

United States District Court,
District of Columbia.

July 22, 1996.

Santha Sonenberg, Federal Public Defender for D.C., Washington, DC, Jonathan Frederick Love, Wilkerson & Seamon, Washington, DC, for defendant Jerome Stewart Tolson.

John Michael Facciola, Steven Joseph McCool, U.S. Attorney's Office, Washington, DC, for U.S.

### MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This matter is before the Court on the defendant's motion under 28 U.S.C. § 2255 to vacate his conviction under 18 U.S.C. § 924(c) based upon *Bailey v. United States,* — U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).[1]

While the government concedes that the 924(c) conviction cannot stand after *Bailey,* it has requested that the Court include the two-level adjustment under U.S.S.G. § 2D1.1(b)(1) in resentencing the defendant. In response, the defendant contends that the Court lacks the authority to resentence him on the drug conviction, and that such resentencing would violate the Constitution because he has a legitimate expectation of finality in his original sentence.

### I. Background

On January 12, 1993, Defendant Tolson and codefendant Terrance Gamble were arrested after a search of Gamble's car revealed two weapons and a quantity of crack cocaine. On February 9, 1993, the defendant was charged in a five-count Indictment, which included Count I charging him with possession with intent to distribute "a mixture and substance containing a detectable

---

1. This case was initially assigned to the Court on February 9, 1993, but was reassigned on May 4, 1993, to the Honorable Jack E. Tanner, U.S. District Court for the Western District of Washington, sitting by designation. At the request of Judge Tanner, in order to avoid the substantial expense that would be incurred if he were to travel to Washington, D.C., to preside over this resentencing, the case was transferred back to the Honorable Joyce Hens Green. *See* Order of the Calendar Committee: Reassignment of Case, Cr. No. 93–55–02 (July 19, 1996).

amount of cocaine base, also known as crack," in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and Count II charging him with the use and carry of a firearm during a drug offense in violation of 18 U.S.C. § 924(c)(1).[2]

After Judge Tanner denied the defendants' motion to suppress at an evidentiary hearing on May 21, 1993, Gamble pled guilty and later testified against Tolson at trial. Among other things, he testified that both he and Tolson owned part of the drugs and that each owned one of the weapons. Trial Transcript ("TR"), at 7 (May 25, 1993). Evidence was introduced at the three-day jury trial that the mixture was cocaine base in crack form. On May 26, 1993, Tolson was convicted on all counts.

On July 30, 1993, the Court denied Tolson's motion for a new trial and sentenced him "to be imprisoned for a term of TWO HUNDRED ELEVEN (211) months. This consists of 151 months on Counts 1 and 3 to run concurrent by the count; 60 months on Count 2 to run consecutive to Counts 1 & 3; [and] 12 months on Counts 4 & 5 to run concurrent by the counts and to Counts 1 & 3." Judgment in a Criminal Case, at 2 (July 30, 1993).

Tolson appealed on three grounds: (1) that the introduction of "bad act" evidence under Rule 404(b) caused unfair prejudice, *see* Brief for Appellant, at 9 (filed August 9, 1994); (2) that the evidence was insufficient to support his convictions of possession with intent to distribute crack cocaine and the related firearms offenses, *see id.* at 17; and (3) that the quantity of drugs should have been decided by the jury, *see id.* at 26. In an unpublished opinion, the U.S. Court of Appeals for the District of Columbia affirmed Tolson's conviction except as to Count III (18 U.S.C. § 922(k)), which was vacated due to insufficient evidence. *See* Judgment, No. 93–3166 (filed Apr. 20, 1995; mandate issued June 12, 1995).

On December 6, 1995, the Supreme Court handed down *Bailey,* and, on April 22, 1996, Tolson filed the instant motion under 28 U.S.C. § 2255.

## II. Discussion

Tolson first challenges this Court's authority to resentence him. Tolson's argument is rejected. Although no Court of Appeals has yet addressed this precise question, the greater weight of authority holds that a district court has the authority to resentence on interdependent counts after vacating a 924(c) count under *Bailey. See Merritt v. United States,* 930 F.Supp. 1109 (E.D.N.C.1996); *Alton v. United States,* 928 F.Supp. 885 (E.D.Mo.1996); *Sanabria v. United States,* 916 F.Supp. 106, 114 (D.P.R.1996); *Mixon v. United States,* 926 F.Supp. 178, 180 (S.D.Ala. 1996); *Pedretti v. United States,* 1996 WL 340769 (N.D.N.Y., April 26, 1996); *United States v. Seibert,* 1996 WL 221768 (E.D.Pa., April 26, 1996); *see also United States v. Baker,* 1996 WL 208449 (E.D.Pa., April 18, 1996) (denying motion to vacate 924(c) count but acknowledging authority to recalculate sentence with two-level "gun bump" if motion had been granted). The Court finds the reasoning of *Merritt* particularly compelling.

Contrary to the general weight of authority, Tolson argues that because only a prisoner can bring a motion under 28 U.S.C. § 2255, failure to challenge certain counts removes those counts from the Court's jurisdiction. While there is some support for this argument, *see Rodriguez v. United States,* 933 F.Supp. 279 (S.D.N.Y.1996); *Bell v. United States,* 917 F.Supp. 681, 684–85 (E.D.Mo.1996); *Beal v. United States,* 924 F.Supp. 913, 917 (D.Minn.1996); *Gardiner v. United States,* 1996 WL 224798 (D.Minn., May 3, 1996), the reasoning in these cases is not entirely clear, and the cases are not persuasive.

Tolson's principal argument is based on an overly narrow reading of 28 U.S.C. § 2255 and his failure to acknowledge the "sentencing package" doctrine. While 18 U.S.C.

---

**2.** The other counts were: Count 3, charging receipt and possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k); Count 4, charging possession of an unregistered firearm in violation of 6 D.C.Code

§ 2311(a); and Count 5, charging possession of unregistered ammunition in violation of 6 D.C.Code §§ 2311(a), 2631(3). Count 3 was vacated on appeal.

§ 3582 may limit a court from modifying a term of imprisonment once imposed (as Tolson contends), it does allow the court to modify a sentence to the extent expressly permitted by statute.[3] 28 U.S.C. § 2255 falls within this provision, because once a defendant moves to vacate or correct his sentence, it permits the court to grant relief and to "correct the sentence as may appear appropriate."[4] *See Merritt,* 930 F.Supp. at 1113; *Pedretti,* 1996 WL 340769, *2.

The *Merritt* Court reasoned that because it had imposed an aggregate sentence, upon resentencing, it must re-examine that sentence and make any appropriate adjustments. While the *Merritt* Court relied upon direct appeal cases for the "sentencing package" doctrine, the court stated that the same rule should apply in the collateral attack context as well. The *Merritt* Court found the First Circuit's reasoning persuasive:

> [W]hen a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan. When the conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand, within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both the crime and the criminal.

*United States v. Pimienta–Redondo,* 874 F.2d 9, 14 (1st Cir.), *cert. denied,* 493 U.S. 890, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989); *see also U.S. v. Clements,* 86 F.3d 599, 600–01 (6th Cir.1996) (upholding resentencing where two-level enhancement under § 2D1.1(b)(1) was applied after the 924(c) count was vacated, because the sentences for those convictions were interdependent).

When a defendant is charged and convicted of a violation of 18 U.S.C. § 924(c), a sentencing court is barred from applying the two-level enhancement under § 2D1.1(b)(1), because of the Double Jeopardy Clause. *See, e.g., United States v. Harris,* 959 F.2d 246, 266–67 (D.C.Cir.), *cert. denied,* 506 U.S. 932, 113 S.Ct. 362, 121 L.Ed.2d 275 (1992); *Merritt,* 930 F.Supp. at 1111 (citing U.S.S.G. § 2K2.4, Background). Absent a 924(c) count, however, Section 2D1.1(b)(1) provides for a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed." The two-level enhancement is inextricably linked to, and is interdependent upon, the applicability of the 924(c) count.

■■■ Although the Court has the authority to recalculate a defendant's sentence on multiple convictions when those convictions are part of an overall sentencing package, a new sentence may be limited by the Due Process or Double Jeopardy Clauses, based upon the individual facts of each case. The Double Jeopardy Clause prohibits multiple punishments for the same offense and prohibits a court from increasing a sentence already imposed, if such resentencing would undermine a prisoner's legitimate expectation in finality. *United States v. Fogel,* 829 F.2d 77, 87–89 (D.C.Cir.1987). The Double Jeopardy Clause guarantees that the defendant should be free from living in a continuing state of uncertainty as to whether his sentence will be increased. *Id.* at 88. A

---

**3.** 18 U.S.C. § 3582 provides, in relevant part:

> (c) **Modification of an imposed term of imprisonment.** The court may not modify a term of imprisonment once it has been imposed except that—
>
> in any case—
>
> \* \* \* \* \* \*
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise permitted by statute ...

**4.** Section 2255 provides, in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming

the right to be released ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.

\* \* \* \* \* \*

... If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

prisoner has a legitimate expectation of finality "unless he is or should be aware at sentencing that the sentence may permissibly be increased." *Id.* at 87. Similarly, the Due Process clause prohibits enhancing a defendant's sentence after he has served so much of it that his expectations have crystallized. *See Merritt,* 930 F.Supp. at 1115 (citing *United States v. Lundien,* 769 F.2d 981, 987 (4th Cir.1985), *cert. denied,* 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986)). In sum, a district court is free to correct a defect in the original sentence in order to bring it into compliance with the statute, but the Court cannot increase the sentence where the defendant has a legitimate expectation of finality and is not otherwise on notice that the sentence may permissibly be increased.

■ In this case, neither the Due Process Clause nor the Double Jeopardy Clause will be violated since Tolson's new sentence will not exceed the sentence of 211 months that was originally imposed. A resentence that does not exceed the initial sentence cannot violate the Constitution. While Tolson may have a legitimate expectation in the finality of his sentence, he does not have a legitimate expectation of finality in the discrete components of a sentence which is comprised of interdependent counts. *See Merritt,* 930 F.Supp. at 1115 (citing *Pimienta–Redondo,* 874 F.2d at 16); *Mixon,* 926 F.Supp. at 180–81; *Alton,* 928 F.Supp. at 887–88. Moreover, the relationship between Section 2D1.1(b)(1) and 18 U.S.C. § 924(c) dilutes any reasonable expectation that the drug count sentence was final and could not be adjusted. When Tolson was sentenced in 1993, he knew or should have known that the two-level enhancement would have been applied but for the existence of the 924(c) count. After the 924(c) count is vacated, it should come as no surprise that the two-level enhancement would be applied because of the interdependent nature of the counts comprising the sentence.

*Warner v. U.S.,* 926 F.Supp. 1387 (E.D.Ark.1996), upon which Tolson relies, is not to the contrary. In *Warner,* a district court ruled that it would violate both double jeopardy and due process to include a two-level enhancement upon resentencing a defendant where the defendant had already completed serving his sentence. *See* 926 F.Supp. at 1395–96. It is hard to disagree with that conclusion, but the *Warner* case only illustrates the limits of a court's authority—not its application in all cases. *Warner* does not support the defendant's proposed result here, simply because Tolson has not finished serving his original sentence.

Tolson will be resentenced based upon the guidelines currently in effect. *United States v. Graham,* 83 F.3d 1466, 1482 (D.C.Cir. 1996); *United States v. Clark,* 8 F.3d 839, 844 (D.C.Cir.1993). Upon consideration of the evidence in the record and the arguments of the parties, the Court concludes that it is appropriate to increase Tolson's base offense level by two levels under § 2D1.1(b)(1), and the Court rejects the defendant's argument that he is entitled to a base level of 16 (for cocaine hydrochloride) as opposed to a base level of 32, as originally imposed for cocaine base, meaning crack cocaine.

U.S.S.G. § 2D1.1(b)(1) provides: "if a dangerous weapon (including a firearm) was possessed, increase by two levels." "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.,* at Application Note 3. However, the law in this Circuit is not entirely clear on the order and burden of proof under U.S.S.G. § 2D1.1(b)(1). Based upon language that has since been deleted, the D.C. Circuit once held that in order to apply this enhancement, the prosecution must show that the defendant possessed the weapon "intentionally, recklessly or by criminal negligence." *United States v. Burke,* 888 F.2d 862, 865–68 (D.C.Cir.1989). In November of 1989, after *Burke* was handed down, the Guidelines were amended and the scienter language, upon which the *Burke* Court relied, was deleted. *See id.* at 866. Although the Court of Appeals has not directly overruled *Burke,* it appears to have been undermined by the November 1989 amendments, as has been noted by other circuits. *See, e.g., United States v. Fiala,* 929 F.2d 285, 289 (7th Cir. 1991).

Several circuits have held that once the government proves that the weapon is pres-

ent, the burden shifts to the defendant to show lack of a connection to the drug offense. *See United States v. Hall,* 46 F.3d 62, 63 (11th Cir.1995); *United States v. Roberts,* 980 F.2d 645, 647 (10th Cir.1992); *United States v. Corcimiglia,* 967 F.2d 724, 727–28 (1st Cir.1992); *United States v. Durrive,* 902 F.2d 1221, 1222–23 (7th Cir.1990); *United States v. Restrepo,* 884 F.2d 1294, 1296 (9th Cir.1989); *United States v. McGhee,* 882 F.2d 1095, 1097–99 (6th Cir.1989). The 8th Circuit, upon which Tolson relies, puts the entire burden on the government "to establish a relationship between a defendant's possession of the firearm and the offense." *United States v. Khang,* 904 F.2d 1219, 1221–24 (8th Cir.1990); *see also United States v. Richmond,* 37 F.3d 418, 419 (8th Cir.1994).

■ Because *Burke* is no longer controlling, this Court will adopt the majority approach. The government must establish that the weapon was present, which is well supported by the record, and Tolson must show that it was not connected to the drug offense. The weapons at issue were concealed under the seat of the car, next to the crack cocaine. The record clearly establishes ownership and possession, which the defendant conceded at sentencing. Similarly, at trial Gamble testified that the purpose of the weapons, which were located next to the crack cocaine, was for protection. TR at 8 (May 25, 1993). In addition, the Court finds persuasive the trial judge's charge to the jury that possession of the weapon was a necessary but insufficient requirement to find "use or carry" in relation to the 924(c) count and the jury's subsequent finding of guilt on the 924(c) count. TR at 177; *see Harris,* 959 F.2d at 266. It is clear that the weapon was present, and Tolson has not identified or offered any evidence to show that his pistol was not connected to the drug offense.

■ Finally, relying primarily on *United States v. James,* 78 F.3d 851 (3rd Cir.1996), Tolson argues that, upon resentencing, the

Court must determine by a preponderance of the evidence that he possessed crack, as opposed to powder cocaine. Tolson does not argue, nor could he, that his conviction was infirm or that he is entitled to retroactive application of a 1993 change to the Sentencing Guidelines.[5] *See United States v. Jackson,* 59 F.3d 1421, 1423 (2nd Cir.1995); *United States v. Camacho,* 40 F.3d 349, 353 (11th Cir.1994); *Callejas v. United States,* 917 F.Supp. 125, 128 (D.P.R.1996). Significantly, Tolson did not contend at trial, in his motion for a new trial or on appeal, that the substance he possessed was anything other than cocaine base, meaning crack. Even now, he is not challenging the crack cocaine conviction directly. Instead, he is only arguing that upon resentencing under the Guidelines, the government must prove that the substance was crack, as opposed to powder cocaine.

Tolson's reliance upon *James* is misplaced, and his argument is rejected. *James* involved an Indictment that charged possession "of a detectable amount of cocaine base" and an ambiguous plea colloquy. Faced with such ambiguities, the Third Circuit remanded and ordered the district court to make a determination as to the substance at issue before applying the enhanced offense level for cocaine base (meaning crack) in the Guidelines.

However, in this case, unlike *James,* there is no such ambiguity. In both the original Indictment and the retyped Indictment, which is attached to the jury's verdict form, Tolson was charged with possession with intent to distribute a mixture containing "cocaine base, also known as crack." Indictment, at Count I. The jury convicted Tolson on this Count, and he did not appeal either the conviction under the statute on this ground or the sentence imposed under the Guidelines. In fact, on appeal, the defendant frequently referred to his conviction of "pos-

---

5. When Tolson was convicted and sentenced, there was no clear distinction between crack and cocaine base. However, after Tolson's conviction in November of 1993, to address a conflict in the Circuits, the Sentencing Commission amended the definitional section of § 2D1.1(c), Note D to read:

"Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy rocklike form.

session of crack cocaine" even while he challenged the sufficiency of the evidence (ultimately prevailing as to the 18 U.S.C. § 922(k) count). *See, e.g.,* Brief for Appellant, at 17 ("possession with intent to distribute of (sic) crack cocaine"); *see also id.* at 6 (characterizing the drug evidence as crack cocaine); *id.* at 7 (characterizing Gamble's testimony regarding "crack cocaine").

By contending that the government must now prove that the mixture that he possessed included sodium bicarbonate, the defendant misreads the Guidelines' definition. While the Guidelines state that crack is usually prepared by mixing cocaine hydrochloride with sodium bicarbonate, the defendant has ignored the word "usually." " 'Crack' is the street name for a form of cocaine base usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1(c), Note D (emphasis added).

■ Although the Court could rely upon the jury's verdict on Count I, upon conducting an independent review of the record in this matter, the Court finds by a preponderance of the evidence that the substance at issue was crack cocaine. Among the evidence in the record, is Tolson's admission to the probation officer: "He indicated that he was in possession of crack and a gun." Presentence Investigation Report, at 4, ¶ 8 (July 8, 1993). Tolson did not object to this statement in the Presentence Investigation Report. *See id.* at 16 ("On July 23, 1993, defense counsel, Jonathan Seamon, advised the probation officer that he had no objections to the presentence report"). Moreover, witnesses testified at the suppression hearing and at trial that the substance involved was cocaine base, meaning crack. *See* Testimony of Officer Soto, Transcript of Motion to Suppress Hearing ("MTS TR"), at 4 ("I could see a lot of crack cocaine."); Testimony of Officer Gaffney, MTS TR at 57 ("The white rock substance that fieldtested (sic) positive for cocaine."); Testimony of Officer Soto, TR at 5 (May 25, 1993) (drugs recovered were "in crack, harder form"). Two experts testified at trial: while a forensic chemist testified that he reduced the granular matter to powder during his analysis, *see* TR Excerpt at 12–16 (May 25, 1993), another expert testified as to the process for preparing and selling crack cocaine. *See* TR at 56–67 (May 25, 1993). Although it may have been helpful had the forensic chemist used the words "crack cocaine," his failure to do so does not, on this record, undermine a finding that the substance was, in fact, crack. In sum, there is sufficient evidence in the record to support, by a preponderance of the evidence, that the substance at issue was "cocaine base, meaning crack." Significantly, there is no evidence to the contrary.

The Court will sentence the defendant according to the following calculations:

| | |
|---|---|
| Base level under § 2D1.1(c): | 32 |
| Two-level adjustment of § 2D1.1(b)(1): | + 2 |
| Total: | 34 |
| | points |

Because the defendant falls within Criminal History Category III, the Guidelines provide for a sentencing range of 188 months to 235 months and a fine range of $17,500 to $4,000,000. The statutory term of supervised release is five years.

### III. Conclusion

Accordingly, it is hereby

**ORDERED** that the defendant's conviction under 18 U.S.C. § 924(c), Count II of the Indictment, is vacated; it is

**FURTHER ORDERED** that the defendant be, and hereby is, committed to the custody of the Bureau of Prisons for a sentence of 188 months on Count I, and 4–12 months each on Counts 4 and 5, to be served concurrently with each other and with Count I. The defendant shall be given credit for time served; it is

**FURTHER ORDERED** that the defendant shall be placed on supervised release for a term of 5 years as to Count I. Within 72 hours of release, the defendant shall report in person to the U.S. Probation Office in the district in which he is released; and it is

**FURTHER ORDERED** that no fine shall be imposed, because the defendant lacks the ability to pay. The defendant shall pay a $50 special assessment as to Count I and the defendant shall be subject to the terms and

**24**

conditions of supervised release in accordance with the Judgment issued this date.

IT IS SO ORDERED.