UNITED STATES of America, Plaintiff,

v.

James Lamont PITT, Defendant.

Action No. 2:96cv904.
Criminal No. 2:94cr33.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 6, 1997.

Laura M. Everhart, Assistant United States Attorney, Norfolk, Virginia, for the U.S.

James Lamont Pitt, Estill, SC, Pro Se Defendant.

## OPINION

REBECCA BEACH SMITH, District Judge.

This matter is before the court on defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.

### I. Factual and Procedural History

On March 5, 1993, defendant James Lamont Pitt made a recorded sale of 27.55 grams of "crack" cocaine to a confidential informant. Drug Enforcement Administration (DEA) Task Force agents confronted defendant with the tape of this March transaction in August, 1993, and asked if he would be willing to cooperate with authorities. Defendant refused to cooperate.

On February 14, 1994, DEA Task Force Agent David Holcombe received information from a previously reliable informant that defendant was playing basketball at the Great Bridge Community Center in Chesapeake, Virginia, and that he had crack cocaine and digital scales in the trunk of his car. Holcombe and the local police staked out the community center. They observed defendant leave the community center, get into his car with several friends, and drive away. A short distance from the community center, the police officers pulled over defendant's car and searched his trunk. In the trunk of the car, the officers found a duffle bag containing 40.07 grams of crack, a loaded 9 mm handgun, digital scales, and some of defendant's personal items.

On May 10, 1994, a jury found defendant guilty of distribution of crack cocaine on March 5, 1993, and possession of crack cocaine with intent to distribute on February 14, 1994, both in violation of 21 U.S.C. § 841(a)(1), and using or carrying a firearm during and in relation to a drug trafficking crime on February 14, 1994, in violation of 18 U.S.C. § 924(c)(1). On August 11, 1994, the court sentenced defendant to 151 months of imprisonment on the drug trafficking counts, and a consecutive term of sixty (60) months for the § 924(c)(1) firearm conviction. Defendant appealed, and his conviction and sentence were affirmed by the Fourth Circuit Court of Appeals on August 14, 1995.

This motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence by a person in federal custody was filed by defendant on September 9, 1996. In his motion, defendant first argued that his conviction and sentence for the violation of § 924(c)(1) must be vacated as a result of the United States Supreme Court's recent decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), where the Court interpreted the term "use" of a firearm more narrowly than prior circuit court opinions. Second, defendant maintained that his sentence must be vacated because his counsel was ineffective.

By Order dated September 11, 1996, this court directed the government to respond to defendant's motion within sixty (60) days. The government filed its response on October 11, 1996, in which it conceded that, after *Bailey,* it cannot prove "use" of a firearm by defendant under § 924(c)(1). The government argued, however, that the facts clearly establish that defendant "carried" a firearm in violation of § 924(c)(1). In addition, the government maintained that defendant's argument that his counsel was ineffective is "absurd."

Defendant filed a reply on October 29, 1996, in which he cited the recent case of *United States v. Smith,* 94 F.3d 122 (4th Cir.1996). Because this case had not been previously cited or addressed by either party, on December 18, 1996, the court directed the government to file a response distinguishing *Smith* from the case at bar, if such a distinction existed. The government responded on January 14, 1997, and stated that it could not sufficiently distinguish *Smith.*

The matter is now ripe for determination by the court.

### II. Analysis

Defendant proceeds under § 2255, which provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. In deciding a § 2255 motion, the court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* Furthermore, if the motion is brought before the sentencing judge, the judge may rely on recollections of previous events to decide the motion. *Blackledge v. Allison,* 431 U.S. 63, 74 n. 4, 97 S.Ct. 1621, 1629 n. 4, 52 L.Ed.2d 136 (1977). This court conducted the sentencing hearing, imposed defendant's sentence, and has thoroughly reviewed the motions, files, and records in this case. Accordingly, the court finds no hearing necessary to address defendant's § 2255 motion.

### A. Section 924(c)(1)

Defendant first argues that his conviction and sentence under § 924(c)(1) must be vacated as a result of the recent Supreme Court decision in *Bailey,* —— U.S. ——, 116 S.Ct. 501 (1995), which narrowed the meaning of the term "use" of a firearm under that statute. The error asserted by defendant in his motion was not raised at trial, sentencing, or on direct appeal to the Fourth Circuit. Accordingly, to obtain relief defendant must meet the two part "cause and actual prejudice" test. *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982). Under that test, "[t]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Id.;*

*United States v. Maybeck,* 23 F.3d 888, 890 n. 1 (4th Cir.1994). This standard presents "a significantly higher hurdle than would exist on direct appeal." *Frady,* 456 U.S. at 166, 102 S.Ct. at 1593. Should a movant fail to demonstrate cause and prejudice, Supreme Court precedent nevertheless authorizes collateral review in a narrow class of cases, where the error involves a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979) (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)).

Applying the two part cause and prejudice test, the court finds defendant has shown adequate cause for his failure to raise this issue at trial, sentencing, or direct appeal, because *Bailey* was decided after his appeal. "A petitioner seeking collateral relief may be excused from failing to make an objection in the original proceeding if the basis for the objection was not known until after the petitioner's conviction became final." *Abreu v. United States,* 911 F.Supp. 203, 207 (E.D.Va.1996) (citing *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984)). Thus, if defendant can also prove that actual prejudice resulted from the error of which he complains, he is entitled to collateral relief. For the reasons set forth below, defendant also meets this requirement.

The jury convicted defendant of violating § 924(c)(1), which provides in relevant part:

Whoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years....

18 U.S.C. § 924(c)(1). "The 'use' and 'carry' elements of § 924(c)(1) are distinct; the statute is violated if a firearm is used *or* carried during and in relation to the named crimes." *United States v. Hawthorne,* 94 F.3d 118, 120 (4th Cir.1996) (emphasis in original) (citing *Bailey,* —— U.S. at ——, 116 S.Ct. at 507).

In *Bailey,* —— U.S. ——, 116 S.Ct. 501, the Supreme Court granted certiorari to clarify the meaning of the term "uses" a firearm

under § 924(c)(1). The Court explained that to obtain a conviction under the "use" prong of § 924(c)(1), the government must demonstrate "more than mere possession of a firearm by a person who commits a drug offense." *Id.* at ———–———, 116 S.Ct. at 505–06. The government must provide "evidence sufficient to show an active employment of the firearm by defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Id.* While the Court did not define the term "carry" in § 924(c)(1), it made clear that its decision narrowing the "use" prong did not affect the "carry" prong of the statute:

While it is undeniable that the active-employment reading of "use" restricts the scope of § 924(c)(1), the Government often has other means available to charge offenders who mix guns and drugs. The "carry" prong of § 924(c)(1), for example, brings some offenders who would not satisfy the use prong within the reach of the statute.

*Id.* at ———, 116 S.Ct. at 509.

Applying this active employment test to the two cases consolidated in *Bailey,* the Court concluded that the evidence was insufficient to support the jury convictions for "use" of a firearm. *Id.* at ———, 116 S.Ct. at 509. Although both defendants were clearly guilty of drug crimes, there was no evidence that defendant Bailey actively employed the loaded pistol found inside the bag in his locked car trunk, or that defendant Robinson actively used the unloaded, holstered firearm found in a locked trunk in her bedroom closet. *Id.* at ———, ———, 116 S.Ct. at 504, 509. Because the defendants in *Bailey* were charged under both the "use" and "carry" prongs of § 924(c)(1), and the appellate court did not consider liability under the "carry" prong, the Court remanded the cases for consideration of that basis for upholding the convictions. *Id.* at ———, 116 S.Ct. at 509.

■ At the trial of Mr. Pitt in this case, the court instructed the jury that defendant was charged in the indictment with both "using" and "carrying" a firearm during and in relation to the commission of a drug trafficking crime, in violation of § 924(c)(1). The jury was also instructed as follows:

The essential elements of this offense, each of which the government must prove beyond a reasonable doubt, are, first, the defendant, James Lamont Pitt committed a drug-trafficking crime; and, second, during and in relation to the commission of that drug-trafficking crime, the defendant knowingly used or carried a firearm.

The phrase uses or carries a firearm means having a firearm or firearms available to assist or aid in the commission of the crimes alleged in the indictment.

In determining whether the defendant used or carried a firearm, you may consider all the factors received in evidence in the case, including the nature of the underlying drug-trafficking crime alleged, the proximity of the defendant to the firearm in question, the usefulness of the firearm to the crime alleged, and the circumstances surrounding the presence of the firearm. The government is not required to show that the defendant actually displayed or fired the weapon. The government is required, however, to prove beyond a reasonable doubt that the firearm was in the defendant's possession or under the defendant's control at the time that a drug-trafficking crime was committed.

Tr. 14–15. After *Bailey,* these instructions are now partially incorrect because the jury could have convicted defendant merely for having a firearm in his possession, a result rejected by the Supreme Court. *United States v. Baker,* 78 F.3d 1241, 1246 (7th Cir.1996) (citing almost identical jury instructions).

■ Although the evidence presented at trial would be sufficient to support a conclusion by the jury that defendant was guilty of violating the "carry" prong of § 924(c)(1),[1]

---

1. This court recently held that "when a person uses a vehicle to commit a drug crime, and he has a firearm in the vehicle, he violates the carry prong of section 924(c)(1)." *United States v. Crawford,* 932 F.Supp. 748, 752 (E.D.Va.1996)

(where police found a loaded semiautomatic pistol, heroin, and a large sum of cash in a toolbox in the bed of defendant's pickup truck and defendant pled guilty to both using and carrying a firearm under § 924(c)(1), the court held he

"the quantum of evidence before the jury ... is secondary to the question of whether the instructions received ensured a constitutional verdict." *Smith,* 94 F.3d at 124. According to the Fourth Circuit,

> A misinstruction as to an essential element of an offense requires a subsequent conviction to be set aside, unless it is assured, beyond a reasonable doubt, that the jury actually made the finding that inheres in the element. In the absence of such an assurance, we cannot be certain that the jury actually found the defendant to have committed the charged offense.

*Id.*

In *Smith,* 94 F.3d 122, because police found two firearms in the defendant's residence, the jury was instructed that it could convict the defendant under § 924(c)(1), if it found that he had either "used" or "carried" the firearms at issue during and in relation to a drug trafficking crime. With regard to the "use" element, the district court instructed the jury that it could find defendant "used" the firearm if it was in his possession at the time that a drug trafficking crime was committed. The Fourth Circuit noted that

clearly " 'carried' a firearm in relation to a drug crime when he transported a pistol in the back of his pickup truck"); *see also United States v. Pineda–Ortuno,* 952 F.2d 98, 104 (5th Cir.) (observing that, according to *Webster's Third International Dictionary* 353 (1966), the "word 'carry' derives from the French *carier,* which means 'to transport in a vehicle' "), *cert. denied sub nom, Ramirez–Carranza v. United States,* 504 U.S. 928, 112 S.Ct. 1990, 118 L.Ed.2d 587 (1992); *United States v. Freisinger,* 937 F.2d 383, 387 (8th Cir. 1991) ("the common usage of 'carries' include[s] 'carries in a vehicle' "); *United States v. Cardenas,* 864 F.2d 1528, 1535–36 (10th Cir.) ("[W]hen a motor vehicle is used, 'carrying a weapon' takes on a less restrictive meaning than carrying on the person. The means of carrying is the vehicle, itself, rather than the defendant's hands or pocket...."), *cert. denied,* 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). *But see United States v. Hayden,* 85 F.3d 153, 162 (4th Cir.1996) (where police found a firearm in defendant's bedroom in his apartment from which he distributed cocaine, the Fourth Circuit held that his conviction under the "carry" prong of § 924(c)(1) required proof that the weapon was within the defendant's reach and available for his immediate use) (citing *United States v. Riascos–Suarez,* 73 F.3d 616, 622–23 (6th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996)). In non-vehicle cases, such as *Hay-*

this instruction was "plainly at odds with *Bailey,* which requires that the firearm be actively employed—not merely possessed—in order to be 'used' within the meaning of § 924(c)(1)." *Id.* at 124 (citing *Bailey,* — U.S. at —, 116 S.Ct. at 506). Because the jury was instructed as to both the "use" and "carry" prongs of § 924(c)(1), the court found it

> cannot know whether [the jury] convicted Smith under § 924(c)(1) because it found him to have 'used' the firearms at issue, or because it found him to have 'carried' them. If the jury found the former regarding either count, based on the pre-*Bailey* instructions that it received, then the verdict it rendered as to that count was not a constitutional one.

*Id.* at 124–25. Thus, the court set aside Smith's convictions under § 924(c)(1) and vacated his sentence. The court noted that the government could, at its option, retry Smith. *Id.* at 125.

In this case, as in *Smith,* the court cannot know whether the jury convicted the defendant of "using" the firearm *or* of "carrying" the firearm during and in relation to a

*den,* courts should apply the availability test when determining whether the defendant "carried" the weapon during and in relation to a drug crime. This test should not be applied, however, when a defendant uses a vehicle to conduct a drug transaction and police find a firearm in the vehicle, because "the vehicle itself becomes the means of carrying the weapon." *Crawford,* 932 F.Supp. at 752; *see also Pineda–Ortuno,* 952 F.2d at 104 ("The cases requiring 'easy reach' are the result of judicial expansions of the definition of 'carrying' in a nonvehicle context. When a vehicle is used, 'carrying' takes on a different meaning from carrying on the person because the means of carrying is the vehicle itself."); *United States v. Bland,* No. 92–317–A (E.D.Va.1996) (unpublished) (rejecting the reasoning of *Riascos–Suarez,* and by implication *Hayden,* in the vehicle context).

Except for the fact that Crawford pled guilty and defendant was found guilty of violating § 924(c)(1), this case is almost identical to *Crawford* in that both defendants used a vehicle to facilitate a drug crime, and both kept a loaded firearm inside the vehicle. Although a properly instructed jury could not have found defendant "used" the firearm as that term is defined in *Bailey,* it certainly could have concluded that defendant was "carrying" the firearm within the meaning of § 924(c)(1).

drug trafficking crime in violation of § 924(c)(1), because the jury was instructed as to both alternatives.[2] The jury may have convicted defendant under the "use" prong of § 924(c)(1) solely because he possessed a firearm in the trunk of his car, which would be an unconstitutional verdict after *Bailey.* Thus, the court VACATES defendant's conviction under § 924(c)(1). However, because the evidence presented at trial was sufficient to sustain a conviction under the "carry" prong of § 924(c)(1), the government may, at its option, retry defendant. *See United States v. Hawthorne,* 94 F.3d 118, 121 (4th Cir.1996) (vacating the defendants' § 924(c)(1) convictions because it could not know the jury's rationale for finding defendants "used" the firearms, but giving the government the option to retry the defendants); *Smith,* 94 F.3d at 125 (same result as *Hawthorne* ).

Having nullified defendant's conviction under § 924(c)(1), the court must also vacate his sentence on this count. *See Hawthorne,* 94 F.3d at 121–22; *Smith,* 94 F.3d at 125. If the government elects to forego a second trial on the vacated § 924(c)(1) charge and proceed directly to resentencing, it may seek to enhance defendant's offense level on the remaining drug convictions by demonstrating that he possessed the firearm in the commission of a drug trafficking crime, as permitted under the United States Sentencing Commission, *Guidelines Manual,* ("USSG") § 2D1.1(b)(1) (1995).[3] *See Hawthorne,* 94 F.3d at 122; *Smith,* 94 F.3d at 125.

### B. Ineffective Assistance of Counsel

Defendant also argues that his sentence should be vacated because his counsel was ineffective. Although the jury found defendant violated 21 U.S.C. § 841(a)(1) by dis-

tributing crack cocaine and possessing crack cocaine with intent to distribute, defendant claims the government failed to prove that he actually possessed "crack" cocaine rather than another form of cocaine base treated as "cocaine." Because his counsel failed to object at sentencing when the court calculated a higher base offense level using the guidelines for crack rather than for cocaine, defendant maintains that his counsel was ineffective.

In order to have his sentence vacated based on ineffective assistance of counsel, defendant must prove both: "(1) deficient performance, and (2) prejudice." *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To prove deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

Failure to meet either prong defeats a defendant's ineffective assistance of counsel claim. *Id.* at 700, 104 S.Ct. at 2071. The court need not address both components of the test if the defendant makes an insufficient showing on one part of the test. *Id.* at 697, 104 S.Ct. at 2069–70. Because the court finds that defendant has failed to prove that he was prejudiced by counsel's failure to object to the sentencing court's calculation of his base offense level using crack instead of

---

**2.** In its January 14, 1997, response to defendant's reply, the government admits that the jury instructions in Mr. Pitt's case cannot be sufficiently distinguished from those in *Smith.* Also, as previously stated, the government concedes in its October 11, 1996, response that it cannot establish defendant "used" the firearm as that term is now defined after *Bailey.* Thus, only the "carry" prong of § 924(c)(1) is under consideration by this court.

**3.** Under USSG § 2D1.1(b)(1), the court may increase defendant's base offense level by two levels if the defendant possessed a dangerous weap-

on, including a firearm, in the commission of a drug offense. At the initial sentencing, defendant's conviction under § 924(c)(1) precluded the government from seeking to enhance his sentence on the drug convictions for having possessed a firearm. *See* USSG § 2K2.4, comment. (n. 2) (proscribing the application of any specific offense characteristic for possessing, using, or discharging a firearm where the court has imposed a sentence under 18 U.S.C. §§ 844(h), 924(c), or 929(a) in conjunction with an offense underlying those statutes).

cocaine, the court need not address whether defense counsel's performance was deficient.

Under the Drug Quantity Table in USSG § 2D1.1, the sentencing court must use the same base offense level for a crime involving 1.5 kilograms or more of cocaine base, or crack, and a crime involving 150 kilograms or more of cocaine. Therefore, under the guidelines, an enhanced sentence, or an 100:1 ratio, exists when the substance attributed to defendant is crack rather than cocaine. In 1993, the Sentencing Commission changed § 2D1.1(c) in Amendment 487 to include the following definition of cocaine base:

> "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine by hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

USSG § 2D1.1(c) & App. C. Amendment 487 further explains that, "[u]nder this amendment, forms of cocaine base other than crack (*e.g.*, coca paste, an intermediate step in the processing of coca leaves into cocaine hydrochloride, scientifically is a base form of cocaine, but it is not crack) will be treated as cocaine." *Id.*

Defendant cites *United States v. James*, 78 F.3d 851, 858 (3rd Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 128, 136 L.Ed.2d 77 (1996), for the proposition that the government must prove by a preponderance of the evidence at sentencing that the form of cocaine base attributed to a defendant was actually crack before the sentencing court can apply the enhanced sentence for crack pursuant to USSG § 2D1.1. In *James*, the defendant appealed his sentence because he claimed the government did not prove at sentencing that the substance at issue was crack. Although the government referred to the substance as "crack cocaine" when it provided a description of his crime during the plea colloquy, the court noted that the indictment charged defendant with possession and distribution of "a substance containing a detectable amount of cocaine base," the laboratory analysis and the plea agreement referred to the substance as "cocaine base," and the sentencing judge referred to the substance attributed to defendant as "cocaine base" during the plea colloquy. The Third Circuit found that the government failed to prove by a preponderance of the evidence that the form of cocaine base sold by the defendant was crack. The case was then remanded to the district court to make a determination of the substance attributed to defendant before applying the enhanced offense level for crack in USSG § 2D1.1. *Id.* at 855–58.

In *United States v. Tolson*, 935 F.Supp. 17 (D.D.C.1996), after vacating defendant's § 924(c)(1) conviction for carrying a firearm during a drug offense, the district court re-sentenced the defendant on his conviction for possession with intent to distribute a mixture containing a detectable amount of cocaine base. Citing *James*, the defendant argued that the court must determine by a preponderance of the evidence that the defendant possessed crack cocaine, as opposed to another form of cocaine base. The court noted that, contrary to *James*, there was no ambiguity in the record regarding the fact that defendant possessed a mixture containing crack cocaine. The indictment charged defendant with possession of a substance "containing cocaine base, also known as crack," the jury convicted him on this count, defendant did not appeal his conviction or sentence on this ground, on appeal the defendant referred to his conviction as "possession of crack cocaine," the defendant admitted to his probation officer that he was in possession of crack, he did not object to this statement in the presentence investigation report, and witnesses testified at a suppression hearing and at trial that the substance involved was crack cocaine. Thus, the court held there was "sufficient evidence in the record to support, by a preponderance of the evidence, that the substance at issue was 'cocaine base, meaning crack.'" *Id.* at 22–23.

██ In this case, like *Tolson* and unlike *James*, there is sufficient evidence in the record to support, by a preponderance of the evidence, that the substance attributed to defendant was crack cocaine, and not another form of cocaine base. First of all, defendant's indictment states that the substance attributed to defendant is "Cocaine Base,

Commonly Known as 'Crack.'" Throughout the suppression hearing and the trial, the substance was referred to as "crack" by police officers, DEA agents, and the confidential informant. The defendant testified at trial, and he never disputed that the drug was "crack" nor did he claim the substance was any other form of cocaine base. When instructing the jury, the court referred to the substance as "crack cocaine," and the jury found defendant guilty of the counts alleged in the indictment which referred to the drug as "Cocaine Base, Commonly Known as 'Crack.'" During sentencing, the substance was referred to as "crack cocaine." Unlike the defendant in *James,* defendant failed to suggest at sentencing that the substance attributed to him was not "crack"—he did not claim the substance was coca paste or another form of cocaine base treated as cocaine— and he failed to raise this argument during his direct appeal to the Fourth Circuit.

As in *Tolson,* all of the evidence in the record points to the conclusion, by a preponderance of the evidence, that defendant possessed and distributed crack cocaine. Moreover, there was no evidence presented at trial, sentencing, or appeal to suggest that the substance attributed to defendant was anything but crack cocaine. Therefore, defendant was not prejudiced when defense counsel failed to object to the sentencing court's calculation of defendant's base offense level using the guidelines for crack rather than for cocaine. Accordingly, defendant's claim for ineffective assistance of counsel fails.

### III. Conclusion

Defendant's conviction and sentence on Count 3 under 18 U.S.C. § 924(c)(1) are VACATED. With regard to defendant's two convictions on Counts 1 and 2 under 21 U.S.C. § 841(a)(1), his motion to have his sentence vacated, set aside, or corrected due to ineffective assistance of counsel is DENIED. Defendant's conviction and sentence on these two counts remain in effect and unchanged, with the exception that defendant may receive a two level enhancement under USSG § 2D1.1(b)(1) at resentencing for pos-

session of a firearm in the commission of a drug crime, if the United States elects to forego a second trial on the § 924(c)(1) count.[4] The United States is ORDERED to notify the court in writing within thirty (30) days of the date of this Opinion whether it will retry defendant on Count 3 under § 924(c)(1), or proceed directly to resentencing on Counts 1 and 2.

It is so ORDERED.