

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-4-1996

# United States v. James

Precedential or Non-Precedential:

Docket 95-3135

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"United States v. James" (1996). *1996 Decisions.* Paper 209.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/209

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 95-3135

_____


UNITED STATES OF AMERICA,
                              Appellee,

                    v.

KEITH JAMES,
                         Appellant.

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. No. 94-224

_____

Submitted Under Third Circuit LAR 34.1(a)  December 8, 1995
  Before:   STAPLETON, SAROKIN, and ROSENN, <u>Circuit Judges</u>

<u>Filed:  March 4, 1996</u>

Bonnie R. Schlueter, Esq.
Office of United States Attorney
633 United States Post Office & Courthouse
Pittsburgh, PA  15219
          <u>Counsel for Appellee</u>

Thomas Livingston, Esq.
205 Ross Street
The Colonial Building
Pittsburgh, PA  15219
          <u>Counsel for Appellant</u>

_____


OPINION OF THE COURT

_____


ROSENN, <u>Circuit Judge.</u>




1

This appeal primarily presents for consideration questions concerning whether a civil forfeiture of an automobile used in the sale of illegal drugs constitutes punishment under the Double Jeopardy Clause of the Constitution, and whether the Government must prove for purposes of sentence enhancement that cocaine base constitutes crack cocaine. Appellant Keith James pleaded guilty to possession and distribution of cocaine base in violation of 28 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). The United States District Court for the Western District of Pennsylvania sentenced James to 108 months imprisonment pursuant to Sentencing Guidelines Manual § 2D1.1. This section provides for an enhanced sentence for the sale of "crack" cocaine. Prior to sentencing, the Government seized James's 1986 Buick LeSabre, pursuant to the forfeiture provisions contained in 21 U.S.C. §881(a)(4).

James appeals his sentence on several grounds,[1] two of which merit discussion: (1) whether the judgment of sentence for sale of cocaine base subsequent to the administrative forfeiture of James's automobile is a second punishment for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment; and (2) whether the Government must prove at sentencing that the substance James sold was "crack," a

---

[1]The district court properly exercised jurisdiction pursuant to 18 U.S.C. § 3231. This court may hear the appeal from the judgment of sentence pursuant to 28 U.S.C. § 1291 and 18 U.S.C. §3742(a).

particular form of cocaine base subject to severe enhancement under the Sentencing Guidelines.[2]

We see no merit to James's double jeopardy argument. Because we believe, however, that the Government did not prove at sentencing that James sold crack cocaine, James's sentence will be vacated and the case remanded to the district court for re-sentencing consistent with this opinion.

I.

On June 29, 1994, July 1, 1994 and July 11, 1994 James sold cocaine base, allegedly aggregating 57.4 grams, to a confidential informant. Undercover agents of a Drug Enforcement Administration Task Force monitored the transactions. The agents arrested James on September 19, 1994, and seized his 1986 Buick,

---

[2]James also asserts the following arguments on appeal: (1) the Sentencing Guideline provisions which provide for exponentially harsher sentences for crack cocaine than for other forms of cocaine violate the Equal Protection component of the Fifth Amendment; and (2) the mandatory minimum sentencing provisions of 21 U.S.C. § 841(b)(1)(B)(iii) are ambiguous, thus the court should apply the Sentencing Guidelines provisions for powder cocaine, pursuant to the Rule of Lenity. We reject these arguments as meritless.

James further asserts that the enhanced sentence for crack cocaine is arbitrary and capricious in violation of the Due Process Clause of the Fifth Amendment, and cruel and unusual punishment in violation of the Eighth Amendment, in light of the Sentencing Commission's recent criticism of the crack enhancement. Although we empathize with the Commission's recommendations with respect to sentence enhancement for crack as against cocaine powder, Congress has rejected the recommendations, leaving the court with no alternative but to reject the above argument as meritless.

which he used in all three transactions. One month later, the Drug Enforcement Agency (DEA) notified James of the forfeiture proceedings for his automobile, and alerted him as to the procedures to contest the forfeiture. James did not contest the forfeiture, and thus, prior to sentencing, forfeited his interest in the Buick to the United States.

James pleaded guilty to selling 57.4 grams of cocaine base. At sentencing, the court rejected James's arguments referred to above. The court sentenced James to 108 months imprisonment, the minimum sentence available under the Sentencing Guidelines for the possession and distribution of crack cocaine.

## II.

We will first review James's claim that the administrative forfeiture of his automobile constitutes punishment for the same offense for which he was sentenced criminally in violation of the Double Jeopardy Clause of the Fifth Amendment. Review of the district court's ruling is plenary. See Fabulous Assoc. v. Pa. Pub. Util. Comm'n, 896 F.2d 780, 783 (3rd Cir. 1990) (court must exercise independent appellate review in constitutional matters).

James drove the Buick LeSabre that he co-owned with his mother to the drug transactions. Subsequent to James's arrest, the Government seized the car pursuant to 21 U.S.C. § 881(a)(4), which provides, in pertinent part:

4

### (a) Property subject

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

> (4) All conveyances used . . . to transport, or . . . facilitate the . . . sale [of cocaine].

21 U.S.C. § 881(a)(4).

The Government then notified James in writing of the forfeiture proceedings and the legal methods to contest the proceedings. James asserts that he did not contest the forfeiture proceedings because to do so would have been an "exercise in futility."

Prior to his sentencing hearing, James filed a Motion to Bar Imposition of Sentence in the district court. He asserted that the forfeiture of the Buick was punishment, thus a subsequent judgment of sentence would constitute a second punishment for the same offense, in violation of the Double Jeopardy Clause of the Fifth Amendment.

> The Double Jeopardy Clause provides:
> [N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb.

U.S. Const. amdt. 5.

The Supreme Court has noted that the Clause "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." See United States v. Halper, 490 U.S. 435, 440

5

(1989). James asserts that his subsequent sentencing violates the prohibition against multiple punishments.

This court recently held that prosecution subsequent to an administrative forfeiture does not subject a defendant to double jeopardy, because an administrative forfeiture does not constitute former jeopardy. See United States v. Baird, No. 95-1202 (3rd Cir. August 11, 1995). In Baird, law enforcement officials searched the defendant's residence on the suspicion that he was manufacturing and selling a drug called "Ecstacy." The officials seized drugs and manufacturing equipment, along with $2,582 cash. The DEA invoked administrative forfeiture of the seized cash under 21 U.S.C. § 881(a)(6). The defendant claimed that the administrative forfeiture of the cash barred subsequent criminal proceedings.

The defendant in Baird noted that recent Supreme Court decisions have expanded the concept of punishment under the Double Jeopardy Clause. See Montana Dept. of Rev. v. Kurth Ranch, ___ U.S. ___, 114 S. Ct. 1937, 1948 (1994) (state tax imposed on possession and storage of dangerous drugs constituted second punishment for purposes of Double Jeopardy Clause); Austin v. United States, ___ U.S. ___, 113 S. Ct. 2801, 2806 (1993) (relying on Halper to determine that civil forfeiture pursuant to 21 U.S.C. § 881(a)(4) and (7) constitutes punishment for the purposes of the Eighth Amendment's Excessive Fines Clause); Halper, 490 U.S. at 449 (civil sanctions may constitute punishment for double jeopardy purposes to the extent they serve traditional goals of punishment--deterrence and retribution).

6

In _Baird_, the defendant asserted that these Supreme Court cases establish that the administrative forfeiture of money constitutes punishment for double jeopardy purposes. See _Baird_ slip op. at 6. Although the Supreme Court did hold that, under certain circumstances, multiple punishment may constitute double jeopardy, this court found that the forfeiture proceedings in _Baird_ did not constitute double jeopardy. The court noted the distinction between civil and administrative forfeiture proceedings. It asserted:

> [A]dministrative forfeiture is only appropriate in cases where the seized property in question goes unclaimed. Without overstating it, administrative forfeiture is, in reality, a _non-proceeding_ -- it is merely the consequence of no one having come forward to claim the property seized or contest its forfeitability.

_Id._ at 8.

The court went on to explain that the defendant's administrative forfeiture of _unclaimed_ alleged drug proceeds could not be held to constitute punishment for double jeopardy purposes. If this were the only holding in _Baird_, the instant case would appear to be distinguishable. In this case, it is undisputed that James and his mother owned the automobile that was forfeited. This tends to support James's argument that the forfeiture was "punishment." See _Baird_, slip op. at 19 (Sarokin, J., dissenting) (_in rem_ forfeiture serves, at least in part, to punish the owner). The court in _Baird_ assumed _arguendo_, however, that the defendant was the owner of the forfeited money and

7

nonetheless concluded that the significant factor was the failure of anyone to contest the forfeiture proceedings.

The court held that because the defendant in Baird failed to contest the forfeiture, he never became a party to the administrative proceeding. Thus, the defendant could not prevail on the double jeopardy claim. Id. at 12. The court also noted that "no one may be 'punished' in a manner relevant to the Double Jeopardy Clause without first having been subjected to some form of judicial procedure, either in the form of a criminal prosecution or the 'functional equivalent' thereof." Baird, slip op. at 12 n.11 (emphasis in original) (citing Ex Parte Lange, 85 U.S. 163, 176 (1874)). In this case, James also failed to become a party to the forfeiture proceeding, and it was merely administrative and not judicial. See also United States v. Torres, 28 F.3d 1463, 1464-65 (7th Cir. 1994) (when defendant is not a party to forfeiture proceedings, jeopardy does not attach, and further prosecution will not constitute double jeopardy); United States v. Kemmish, 869 F. Supp. 803, 805 (S.D. Cal. 1994) ("Even where the unclaimed property is titled in the name of some person, personal rights protected by the Double Jeopardy Clause are not affected by the forfeiture of the property through administrative proceedings.").

This court's decision in Baird controls the instant case. James did not contest the forfeiture of his automobile. Thus, no former jeopardy attached, and James may not prevail on his double jeopardy claim. We therefore hold that when a defendant in a criminal case invokes the Double Jeopardy Clause

8

because of a prior administrative forfeiture of property, but fails to contest the forfeiture proceeding or become a party to it, jeopardy has not attached.

### III.

James asserts that the district court should not have sentenced him pursuant to the Sentencing Guideline's crack cocaine enhancement provision. This court has plenary review of issues of law raised by the district court's application of the Sentencing Guidelines. See United States v. Mobley, 956 F.2d 450 (3rd Cir. 1992).

The district court sentenced James pursuant to Section 2D1.1 of the Sentencing Guidelines. Section 2D1.1 provides that the court use the same base offense level for a crime involving 1.5 kilograms or more of cocaine base that it would use for a crime involving 150 kilograms or more of cocaine. Thus, an enhanced sentence or "100:1 ratio" exists in crimes involving cocaine base, compared to cocaine, as defined in the Guidelines.

In 1993, the Sentencing Commission amended the Guidelines to include the following definition of cocaine base:
> "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium

9

> bicarbonate, and usually appearing in a lumpy, rocklike form.

U.S.S.G. § 2D1.1

James contends that, by this definition, Section 2D1.1 expressly recognizes that "crack" is one form, among others, of "cocaine base," and the only form that is subject to the sentencing enhancements of Section 2D1.1.  He asserts that the Government has the burden of showing by a preponderance of the evidence, not merely that the substance in question was cocaine base, but that it was a particular form of cocaine base, "crack," as defined in the Guidelines.

James's indictment charged him with distribution and possession of a "substance containing a detectable amount of cocaine base."  The government laboratory analysis reported the substance as "cocaine base."  In addition, James's plea agreement stated:

> The parties stipulate, for purposes of determining Keith Henry James' offense level under the Sentencing Guidelines, that the relevant quantity of cocaine base is 57.4 grams.

In the plea colloquy, the trial judge directed this specific question to the defendant:

> Q.  Now Mr. James, did you, as charged in Count One of the indictment . . . knowingly, intentionally and unlawfully distribute in excess of five grams of a mixture and substance containing a detectable amount of cocaine base?
>
> A.  Yes.

10

Given this record, James asserts that the district court erred in applying the enhanced sentence for crack because he never pleaded guilty to possession or distribution of "crack."

The Government contends that the court need not reach the issue of the Guidelines treatment of crack versus cocaine base. It asserts that James waived his right to contest the enhanced sentence by admitting in the plea colloquy that he sold crack. The problem arises because the indictment, the defendant, and the court at the plea colloquy speak in terms of cocaine base. Government counsel, however, refers to the contraband as "crack cocaine." Thus, at the plea colloquy, the prosecutor informed the court:

> The parties agree that the relevant quantity of cocaine base in determining Mr. James' offense level is 57.4 grams. That's the total net weight of the crack cocaine that was purchased in each of the three transactions that comprise Counts One, Two and Three. (emphasis added).
>
> .                    .                    .
>
> Mr. James exchanged a plastic baggy that contained some suspected crack cocaine. That was sent to a lab, analyzed, and was determined to be--I believe the net weight was 22.0 grams of cocaine base or crack cocaine. (emphasis added).

Thus, the Government contends that "there is no basis, in this case, for this Court to reach the question of law presented by James: whether the statutory term cocaine base is broader than the Sentencing Guideline definition of cocaine base, and whether the government is therefore required to present evidence at

11

sentencing that the cocaine base at issue constitutes crack within the meaning of the Guidelines."

There can be no question that admissions to the court by a defendant during a guilty plea colloquy can be relied upon by the court at the sentencing stage. The problem here, however, on this record, with the defendant and court speaking in terms of cocaine base, and the prosecutor referring to the cocaine base as crack, is whether the Government's characterization of the contraband constitutes a sufficient admission of the defendant under these circumstances that he possessed and sold crack merely because he answered "yes" to the prosecution's description of the crime.

A waiver of rights must be knowing and voluntary. See United States v. Newman, 912 F.2d 1119, 1123 (9th Cir. 1990) (voluntary plea requires real notice of the true nature of the charge). Given the highly severe sentencing ratio of 100:1 for crack versus cocaine, James's sentence may vary dramatically depending on whether he sold crack or cocaine. We do not believe that, without more, the casual reference to crack by the Government in the colloquy with the court over "the relevant quantity of cocaine base in determining Mr. James's offense level" unmistakably amounted to a knowing and voluntary admission that the cocaine base constituted crack. Thus, this court must reach the issue of whether the Statutory Guidelines definition of "cocaine base" as "crack" required the Government to show by a preponderance of the evidence that the substance in question was

12

actually crack, especially in light of the enormously high punishment at risk in this determination.

At his sentencing hearing, James adopted the testimony of Dr. John David Alvin.[3] Dr. Alvin testified extensively as to the chemical properties of cocaine and cocaine base. Further, he testified that there are several ways of preparing cocaine base:

> A:   [Y]ou wanted to know the various methods available of creating or forming the cocaine base from the hydrochloride salt.
>
> Q:   That is correct.
>
> A:   From the plant itself; from the hydrochloride salt?
>
> Q:   Yes.
>
> A:   Yes, there are several methods depending upon, I guess, the degree of sophistication you have available to you.  One method is to take this salt and alkalinize it, which means add some basic material, an alkaline substance, to it which converts it out of its salt form and its cocaine form and base form and then one removes the solvent and is left with a preparation that is a relatively clean preparation of cocaine base.
>
> .          .          .
>
> Q:   What is the Richard Pryor method?
> A:   The Richard Pryor method is a poor example of the process I just described not using the best of solvents and not using the materials that are necessary, but it is another way of converting the salt to the base.  Obviously it is dangerous; it could be cleaner, but it is effective.
>
> .          .          .
>
> Q:   The cocaine base which is derived from that method, how pure is that?

---

[3] Dr. Alvin testified as an expert witness in <u>United States v. Church</u>, Crim. No. 94-106.

A:  On a scale from zero to 100 percent pure, which is all you can get, the first procedure I described to you is close to 100 percent as scientists can get it by the sophisticated methods that the scientists might use.  The method that apparently Richard Pryor used will produce product whose purity is purely dependent on how good that person's technique is. . . . [I]t generally will produce a substance that might be in the 80 to 90 percent range with regard to purity, which is the best possible being 100 percent.

Q:  Okay.  And the government used the term bicarbonate, I believe.

A:  Another method of converting, yes, probably the least sophisticated.  Bicarbonate is an alkaline substance and can produce the desired effect.  By combining the powder hydrochloride with the bicarbonate in a mashy solution and letting it evaporate and letting it dry, you end up with the base cocaine mixed with some bicarbonate.

Q:  And, again, approximately, can you designate any kind of purity for this procedure, generally?

A:  The same rules apply.  It depends on how well it is done and by whom.  But in my experience, that material has been anywhere from 40-some to 70-some percent pure.

James contends that only this last form of cocaine base, the sodium bicarbonate form, is subject to the sentencing enhancements.[4]  The parties discussed James's theory at length at the sentencing hearing.  The court concluded:

_____

[4]As mentioned above, the Guidelines define cocaine base as "crack," "the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rock like form." U.S.S.G. § 2D1.1

14

> [I]t is my opinion and my finding, so that you have a record here, that cocaine base means crack for purposes of the guidelines.

In <u>United States v. Munoz-Realpe</u>, 21 F.3d 375 (11th Cir. 1994), the Court of Appeals addressed the impact of the 1993 defining amendment to the Sentencing Guidelines. In <u>Munoz-Realpe</u>, the authorities arrested the defendant with six bottles containing a liquid that tested positive for cocaine base. <u>Id.</u> at 376. The district court treated the substance as cocaine hydrochloride under the Sentencing Guidelines and thus did not apply the enhanced sentence for crack cocaine or cocaine base. The appellate court affirmed.

The <u>Munoz-Realpe</u> court noted that, effective November 1993, the Sentencing Commission amended Section 2D1.1 of the Guidelines to include the definition of crack as discussed above. The court asserted that the Commission was addressing an inter-circuit conflict. Prior to 1993, some courts held that cocaine base under the Guidelines included all forms of cocaine base, not just crack. <u>See</u> <u>United States v. Rodriguez</u>, 980 F.2d 1375, 1378 (11th Cir. 1992) (the term cocaine base is not limited to crack cocaine); <u>United States v. Jackson</u>, 968 F.2d 158, 161 (2nd Cir. 1992) (forms of cocaine base not pure enough to be crack still fall within Guidelines for enhanced sentence). The Eleventh Circuit Court of Appeals held that, subsequent to the 1993 definition amendment, other forms of cocaine base that are not crack should be treated as cocaine for sentencing purposes. <u>Munoz-Realpe</u>, 21 F.3d at 377.

15

We find the Munoz-Realpe analysis to be persuasive. The Sentencing Commission defines cocaine base for sentencing purposes to mean the form of cocaine base commonly known as crack.  The Government failed to prove by a preponderance of the evidence that the form of cocaine base James sold was actually crack.  Thus, it was error to apply the enhanced sentence for crack pursuant to Section 2D1.1 of the Sentencing Guidelines.

IV.

James further contends that this court should extend the Statutory Guidelines definition of cocaine base to the mandatory minimum sentencing provisions of 21 U.S.C. 841(b)(1)(B)(iii).[5]  In Munoz-Realpe, the Court of Appeals extended the Sentencing Guidelines definition to the mandatory minimum sentencing provisions of 21 U.S.C. § 960(b).[6]  The court reasoned that Congress, through its acceptance of the Guidelines amendment, indicated that it intends the term "cocaine base" to include only crack cocaine.  Thus, the court deemed it proper to look to the Guidelines in determining the meaning of "cocaine base" in the mandatory minimum statute.  See Munoz-Realpe, 21

_____

[5]If the mandatory minimum sentencing provisions for cocaine base do not apply, the court may sentence James to a range of 18 to 24 months pursuant to the Sentencing Guidelines provisions for crimes involving "non-crack" cocaine.
[6]21 U.S.C. § 960 provides the mandatory minimum sentences for the import or export of controlled substances.  Section 960(b) provides for an enhanced sentence for crimes involving cocaine base.

F.3d at 377-78.  In so holding, the Court of Appeals for the Eleventh Circuit conflicted with the Second Circuit Court of Appeals' holding in United States v. Palacia, 4 F.3d 150 (2nd Cir. 1993) (declining to reinterpret the Minimum Mandatory definition in the absence of new guidance from Congress.)

This court need not reach the issue of whether the Guidelines definition of cocaine base should extend to the mandatory minimum sentencing provisions.  James's plea agreement states that he sold cocaine base in violation of 21 U.S.C. §841(b)(1)(B)(iii).[7]  Thus, he is precluded from arguing that the mandatory minimum sentence should not apply.

V.


In summary, the district court committed no error in rejecting the defendant's claim of double jeopardy.  The conviction of the defendant will be affirmed.  However, the court erred in its application of the Sentencing Guidelines enhancement for crack in absence of proof by a preponderance of the evidence that the form of cocaine base James sold was actually crack.  The defendant's sentence will be vacated and the case remanded for resentencing consistent with this opinion.

---

[7]Although James allegedly sold a total of 54.7 grams of cocaine base, he pled guilty to Count I, which charged him with distribution and possession with intent to distribute in excess of 5 grams of cocaine base.  Pursuant to 21 U.S.C. §841(b)(1)(B)(iii), the appropriate sentence range is not less than 5 years, and not more than 40 years.

17

UNITED STATES OF AMERICA v. KEITH JAMES
NO. 95-3135

STAPLETON, J., Concurring:

I join parts I, II, IV and V of the court's opinion.  I further agree wit
colleagues that following the 1993 amendment, forms of cocaine base other than crac
should be treated as cocaine for purposes of sentencing under the Guidelines.

I disagree only with that portion of part III holding that the district c
was foreclosed from relying upon the defendant's apparent admission during his plea
colloquy that he sold crack cocaine.  The majority concludes that because of the se
of the 100:1 sentencing ratio, a district court cannot rely on an apparent admissio
the defendant in a plea colloquy unless a court of appeals, on review, believes tha
"unmistakably amount[s] to a knowing and voluntary admission." In my view, the issu
whether James admitted to selling crack is an issue of fact.  Like all other issues
fact material to a sentencing decision, this is an issue for the district court sub
only to clearly erroneous review by this court. Moreover, like all other such fact
it is to be decided by a preponderance of the evidence standard, not a higher one o
unmistakability.

At the plea colloquy the prosecutor referred to the substance in question
times as "crack cocaine."  The court then asked, "Mr. James, you heard what [the
prosecutor] just said about what you did.  Do you agree with what he said."  James
responded, "yes."  The district court was in a far better position than we to deter
a matter of fact what James intended to affirm by this statement.  If the court had
an express finding that James intended to affirm that he sold crack and that, based
preponderance of the evidence, crack was sold, I would be unable to say that the co
conclusions were clearly erroneous.

19

It appears to me from the transcript of the sentencing hearing that the [...] judge concluded that James intended to admit selling crack. It also appears that h[...] relied upon this finding when he determined by a preponderance of the evidence that [...] substance was crack. Were I sure that this is what transpired in the district cou[...] would affirm. The transcript is less than clear, however, and I would remand for [...] clarification from the district court. On remand, the district court, if it so cho[...] could affirm or disaffirm a factual finding that James admitted selling crack and, [...] affirmed, could rely upon that finding in resentencing. In the alternative, the di[...] court, in its discretion, could elect to hear further evidence regarding the compos[...] of the substance sold. While the government is not to be routinely granted two opportunities to carry its burden at a sentencing hearing, a reopening of the recor[...] be justifiable here because the government, at the original sentencing hearing, was[...] clearly operating under the assumption, arguably reasonable, that James had concede[...] the relevant substance was crack cocaine. See United States v. Dickler, 64 F.3d 81[...] (3d Cir. 1995).

20