**UNITED STATES of America**

**v.**

**Wilbert BROWN**

**Criminal No. 95–618.**

United States District Court,
E.D. Pennsylvania.

March 18, 1997.

Def. Assoc. Defender Association of Philadelphia, Federal Court Div., Philadelphia, PA, for Wilbert Brown.

Tammy Avery, Zane D. Memeger, U.S. Attorney's Office, Philadelphia, PA, for U.S.

MEMORANDUM

ROBRENO, District Judge.

I.

Defendant Wilbert Brown pled guilty to one count of possession with the intent to distribute cocaine base crack, in violation of 21 U.S.C. § 841(a)(1). (doc. 31) At sentencing, the Court applied the enhancement pro-

vision for crack cocaine under § 2D1.1 of the Sentencing Guidelines.[1] Following a sentencing hearing, the court sentenced the defendant to seventy-two months imprisonment. The defendant has appealed the sentence. This Memorandum is being filed in accordance with Rule 3.1 of the Third Circuit Local Appellate Rules.[2]

## II.

■ Relying upon the Third Circuit's recent decision in *United States v. James*, 78 F.3d 851 (3d Cir.1996), the defendant argued at sentencing that the Court was not authorized to apply the crack cocaine enhancement provision under the Sentencing Guidelines, 18 U.S.S.G. § 2D1.1, because the government had failed to prove that the drugs involved were crack cocaine.

In *James*, the indictment charged the defendant with possession and distribution of "a substance containing a detectable amount of cocaine base." *James* at 855. Likewise, both the plea agreement and the laboratory analysis referred to by the prosecutor during the course of the plea colloquy in *James* described the contraband as cocaine base and not as crack cocaine. *Id.* Moreover, while "the indictment, the defendant, and the [district] court at the plea colloquy [spoke] in

terms of cocaine base," government counsel referred "to the contraband as 'crack cocaine.'" *Id.*

Faced with such ambiguities, the Third Circuit reasoned that "[w]e do not believe that, without more, the casual reference to crack by the [g]overnment in the colloquy with the court over 'the relevant quantity of cocaine base in determining Mr. James's offense level' unmistakably amounted to a knowing and voluntary admission that the cocaine base constituted crack." *Id.* at 856.

Absent a knowing and voluntary admission by the defendant, the Third Circuit explained that in order for the crack cocaine enhancement provision under § 2D1.1 to apply, the government was required to show at sentencing "by a preponderance of the evidence that the substance at issue was actually crack, especially in light of the enormously high punishment at risk in this determination." *Id.* The Third Circuit found in *James* that the evidence which the government had introduced at sentencing through the testimony of a chemist generally regarding the "chemical properties of cocaine and cocaine base" and the "several ways of preparing cocaine base" was insufficient to satisfy the government's burden. *Id.* at 856[3]. There-

---

1. The Notes to the Drug Quantity Table in § 2D1.1 explain that "[c]ocaine base," for purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy rocklike form."

   The enhancement provision for crack cocaine under § 2D1.1 of the Guidelines essentially means that any defendant who possesses or distributes crack cocaine is eligible to receive the same sentence as another defendant who possesses or distributes approximately 100 times greater a quantity of some other form of cocaine. Section 2D1.1 provides that "the [c]ourt use the same base offense level for a crime involving 1.5 kilograms or more of cocaine base that it would use for a crime involving 150 kilograms or more of cocaine. Thus, an enhanced sentence or 100:1 ratio exists in crimes involving cocaine base, compared to cocaine, as defined in the Guidelines." *United States v. James*, 78 F.3d 851, 855 (3d Cir.1996).

2. Rule 3.1 of the Third Circuit Local Appellate Rules provides as follows:

   **3.1 Notice to Trial Judge; Opinion in Support of Order.** At the time of the filing of the notice of appeal, the appellant shall mail a copy thereof by ordinary mail to the trial judge. Within 15 days thereafter, the trial judge may file and mail to the parties a written opinion or a written amplification of a prior written or oral recorded ruling or opinion. Failure to give notice of the appeal to the trial judge shall not affect the jurisdiction of this Court.

3. In *James*, the Third Circuit addressed the impact of the decision by the United States Sentencing Commission in 1993 to amend § 2D1.1 of the Guidelines by including within that section a definition of "cocaine base" to mean "crack," the "street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." *James*, 78 F.3d at 857 (discussing 18 U.S.S.G. § 2D1.1). Prior to 1993, the Third Circuit explained, "some courts held that cocaine base under [§ 2D1.1 of] the Guidelines included all forms of cocaine base, not just crack." *Id.* Citing with approval the decision by the Eleventh Circuit in *United States v. Munoz–Realpe*, 21 F.3d 375 (11th Cir. 1994), the Third Circuit likewise concluded that the Sentencing Commission intended only crack

fore, the Third Circuit remanded the case to the district court for resentencing. *See id.* at 858.

*James* is distinguishable from this case. First, unlike *James*, where the indictment charged the defendant with possession and distribution of cocaine base, the indictment in this case charged the defendant with possession with intent to distribute cocaine base crack.[4] Second, also unlike *James*, where the defendant was asked at the plea colloquy about an indictment which identified the contraband as cocaine base, the defendant here agreed at the plea colloquy that the contraband charged in the indictment and involved in the instant offense was cocaine base crack.[5] Third, also unlike *James*, where the

cocaine to be treated as cocaine base for purposes of applying the sentencing enhancement provisions under § 2D1.1. *See id.*

4. It is clear from the record in this case that government counsel referred to the contraband at issue as crack cocaine throughout the entire plea colloquy and represented to the Court at the colloquy that the laboratory tests performed by the Philadelphia Police Department confirmed that the contraband seized from the defendant was crack cocaine. *See* doc. 52 at 15. It was only at the sentencing hearing on February 20, 1997, that government counsel for the first time acknowledged that "the [laboratory] report that was prepared by the Philadelphia police lab states cocaine base and cocaine only, white chunky substance. It doesn't say crack." Doc. 61 at 11.

5. During the plea colloquy in *James*, the following exchange took place between the Court and the defendant:

> THE COURT: Now, Mr. James, did you, as charged in Count One of the indictment . . . knowingly, intentionally, and unlawfully distribute in excess of five grams of a mixture and substance containing a detectable amount of *cocaine base?*
> DEFENDANT: Yes.

*James*, 78 F.3d at 855 (emphasis added).

In contrast with the plea colloquy in *James*, the Court in this case specifically asked the defendant as follows about whether he was pleading guilty to an offense which involved crack cocaine:

> THE COURT: Have you received a copy of the indictment, that is the written charges made against you by the Grand Jury in this case?
> DEFENDANT: Yes.
> THE COURT: And have you had an opportunity and in fact have you consulted with your attorney about the charges made against you in the indictment?
> DEFENDANT: Yes.

defendant was asked at the plea colloquy about a plea agreement which referred to the contraband as cocaine base, the defendant here agreed at the plea colloquy that the plea agreement described the contraband as cocaine base crack. Therefore, in light of the indictment, and of the defendant's own unambiguous responses to questions at the plea colloquy as to whether he understood the offense as charged in the indictment and as stated in the plea agreement to be possession with intent to distribute cocaine base crack, the Court concludes that the defendant's admission at the plea colloquy that he possessed cocaine base in the form of crack was knowing and voluntary.[6] *See e.g., Bailey v. United States,* 949 F.Supp. 495, 497–98

> THE COURT: Do you understand that in summary the charges against you are that you knowingly and intentionally possessed with intent to distribute in excess of five grams of a mixture or substance containing a detectable amount of *cocaine base crack,* a Schedule II controlled substance, in violation of Title 21 United States Code Section 841(a)(1). *Do you understand those to be the charges against you?*
> DEFENDANT: Yes, your Honor.

Doc. 52 at 4 (emphasis added).

6. Upon independently reviewing the record, the Court has found that following the defendant's admission to the offense charged in the indictment, e.g., possession with intent to distribute cocaine base crack, there are two references in the record by the Court to the contraband as cocaine base as opposed to crack cocaine. In the first instance, the Court asked the defendant whether he understood that the elements of the crime to which he was pleading guilty were ". . . one, that [he] possessed with intent to distribute cocaine base, and, two, that [he] did so knowingly and intentionally." Doc. 52 at 13. In the second instance, upon the Court's direction to state the plea to the defendant, the clerk stated that the defendant had previously pled not guilty to the indictment charging him with "possession with intent to distribute cocaine base in violation of Title 21 United States Code Section 841(a)(1)" and then asked the defendant "[a]s to Count One of this indictment, how do you plead now, guilty or not guilty." Doc. 52 at 20.

The statutory offense to which the defendant had pled guilty, 21 U.S.C. § 841(a)(1), makes it unlawful to possess with the intent to distribute cocaine base. However, unlike § 2D1.1 of the Sentencing Guidelines, the statute itself does not define cocaine base to mean crack. Therefore, the Court concludes that the two subsequent references in the record to cocaine base were consistent with the statutory requirements.

(E.D.Mich.1996) (finding no ambiguity in the plea colloquy and concluding that the defendant's admission that the cocaine base constituted crack was knowing and voluntary).

Since "[t]here can be no question that admissions to the [district] court by a defendant during a guilty plea colloquy can be relied upon by the [district] court at the sentencing stage," *James*, 78 F.3d at 856, and in light of the knowing and voluntary admission by the defendant that the contraband involved was crack cocaine, the Court concludes that it was proper to sentence the defendant pursuant to the crack cocaine enhancement provision under § 2D1.1.

■ Even if the Court were unable to find that the defendant had made a knowing and voluntary admission at the plea colloquy that the contraband was crack cocaine, the Court concludes that under *James* the government has met its burden at sentencing by establishing by a preponderance of the evidence that the contraband involved in the instant offense was crack cocaine. *See also United States v. Bennett*, 100 F.3d 1105, 1111 (3d Cir.1996) (explaining that under *James* the crack cocaine sentencing enhancement provision contained in § 2D1.1 applies "where the government proves by a preponderance of the evidence that the cocaine involved in the instant offense was crack."). At the sentencing hearing, the government called Philadelphia Police Officer Kenneth Bellis, who testified that the field tests which were performed on the narcotics contained in plastic bags seized from the defendant's residence tested positive for "cocaine." Doc. 61 at 25–26. Furthermore, based upon his police training and participation in "numerous arrests" for drug sales involving crack cocaine, Officer Bellis testified that the contraband seized from the plastic bags found inside the defendant's residence "was all a small off-white colored rocky substance ... like gravel ... which looked like—it appeared to be crack cocaine." Doc. 61 at 24. While Officer Bellis acknowledged that the laboratory report from the Philadelphia Police Department

used the term "cocaine base" to describe the results from subsequent laboratory tests performed on the contraband, nevertheless, he explained that "when we get the analysis back [from the laboratory] saying cocaine base, that it means they have a presence for crack cocaine in that cocaine. That's been my experience." Doc. 61 at 30. Therefore, based upon the competent and credible testimony of Officer Bellis, the Court concludes that the government has shown by a preponderance of the evidence that the contraband at issue in the instant offense was crack cocaine.

### III.

For the above reasons, the Court finds that it was proper to sentence the defendant pursuant to the crack cocaine enhancement provision under § 2D1.1.

---

The Court finds that, in light of the record as a whole, the two subsequent references to cocaine base do not render the defendant's admission at the plea colloquy that the cocaine base constituted crack unknowing and involuntary.