**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4079

CARL REYNOLDS, a/k/a Neal, a/k/a
Jermaine Azore, a/k/a Karl
Reynolds,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                          No. 96-4088

OWEN WALKER,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                          No. 96-4111

MARGARET GRANDJEAN,
Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of West Virginia, at Beckley.
Elizabeth V. Hallanan, David A. Faber, District Judges.
(CR-95-71)

Submitted: January 14, 1997

Decided: April 15, 1997

Before WILKINS, NIEMEYER, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

David Schles, STOWERS & ASSOCIATES, Charleston, West Virginia; Patrick L. Brown, Union, Kentucky; Philip A. LaCaria, Welch, West Virginia, for Appellants. Rebecca A. Betts, United States Attorney, Michael L. Keller, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Carl Reynolds appeals the 210-month sentence he received on his guilty plea to conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C.§ 846 (1994). Owen Walker appeals the 144-month sentence imposed on him after his guilty plea to the same charge. Margaret Grandjean appeals the forty-eight-month sentence she received after pleading guilty to use of a communication facility in the commission of a conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 843(b) (1994). Each Appellant raises several issues regarding the application of the sentencing guidelines. We affirm.

I.

Reynolds, Walker, and others distributed marijuana and crack cocaine in Beckley, West Virginia, from September 1993 until May

2

1995. Reynolds was the organizer of the conspiracy. One of Reynolds' customers was Shawn Swain, who was himself the leader of a crack cocaine conspiracy. Shawn Swain reported that he had seen over one kilogram of crack cocaine in the possession of Walker, Reynolds, and other co-conspirators.

The relationship between Swain's organization and Reynolds' began to deteriorate in mid-1994. At one point,"Pee Wee" Swain pulled a firearm on Walker and two accomplices and robbed them of crack cocaine. Reynolds retaliated by firing eight shots from his vehicle into a van in which Shawn Swain was riding. Walker was present in Reynolds' car at the time of the shooting.

Margaret Grandjean was involved in the actual distribution of crack cocaine for the Reynolds conspiracy, and she permitted Reynolds to store significant amounts of drugs in her house. In June 1994, Grandjean paged Reynolds in Maryland to ask him to bring approximately one gram of crack cocaine back to West Virginia.

II.

Grandjean claims that she was improperly sentenced, due to the inclusion in her presentence report ("PSR") of evidence that she was responsible for over fifty grams of crack cocaine, even though it is undisputed that the actual facilitation offense to which she pled guilty involved only one gram of crack cocaine. The PSR contained information concerning Grandjean's drug activity from 1994 to 1995, stating that she bought and sold cocaine and stored over 125 grams of crack cocaine in her house for the Reynolds conspirators.

Grandjean's claim is without merit, because with respect to drug offenses, the defendant is accountable for all quantities of contraband with which she was directly involved. USSG § 1B1.3, comment. (n.2).* In addition, when criminal activity is undertaken in concert with others (whether charged as a conspiracy or not), relevant conduct includes the acts of others which are in furtherance of the criminal activity and reasonably foreseeable. USSG § 1B1.3(a)(1)(B). Grand-

_____

*United States Sentencing Commission, Guidelines Manual (Nov. 1995).

3

jean was charged with facilitating a conspiracy. Accordingly, any conduct in furtherance of the conspiracy that was known to her or reasonably foreseeable to her was properly attributed to her for sentencing purposes. United States v. Holley, 82 F.3d 1010, 1011 (11th Cir. 1996) (proper application of USSG § 1B1.3(a)(1)(B) requires that relevant conduct encompass underlying conspiracy in§ 843(b) case).

Grandjean's attempt to narrowly construe her offense of conviction is unavailing. She is responsible for all of the drugs that she reasonably knew were part of the underlying conspiracy that she facilitated. It is undisputed that Grandjean agreed to store over 125 grams of crack cocaine in her house, thereby further aiding the conspiracy she had facilitated in her offense of conviction. Therefore, we find that the district court properly considered this drug quantity as relevant conduct for sentencing purposes.

III.

Although the district court allowed Grandjean a two-level reduction for minor participation in the offense pursuant to USSG § 3B1.2(b), she contends that she should have received a four-level reduction for minimal participation under USSG § 3B1.2(a). A district court's determination of whether a defendant had a minor or minimal role is factual and thus, subject to the clearly erroneous standard of review. United States v. Daughtrey, 874 F.2d 213, 218 (4th Cir. 1989). Role adjustments are determined on the basis of all relevant conduct. USSG § 1B1.3(a). Grandjean participated in an ongoing conspiracy by dealing drugs and storing large amounts of contraband. While her involvement was not as extensive as that of her co-defendants, we find that the district court did not clearly err in finding that her role was not properly characterized as minimal.

IV.

Grandjean asked the district court to depart on the ground that the applicable guidelines range overstated the seriousness of her criminal conduct. The district court stated that it could not find a specific, unique factor in her case that would warrant departure and therefore, the guidelines prevented a downward departure. A court's decision not to depart is generally not reviewable on appeal. United States v.

4

Bayerle, 898 F.2d 28, 30 (4th Cir. 1990). However, when the district court bases its refusal to depart on lack of legal authority, its decision is a legal one and is reviewed de novo. United States v. Hall, 977 F.2d 861, 863 (4th Cir. 1992). Grandjean asserts that the district court misunderstood its authority to depart.

In the absence of a characteristic that distinguishes a case as sufficiently atypical to warrant a sentence different from that called for under the guidelines, a sentence outside the guidelines range is not authorized. See 18 U.S.C. § 3553(b) (1994). Here, the district court understood its ability to depart in an atypical case but determined that nothing about Grandjean's case qualified for a departure. Accordingly, Grandjean's sentence is affirmed.

V.

Walker asserts that the district court erred in applying a two-level enhancement pursuant to USSG § 2D1.1(b)(1) for possession of a firearm during a drug offense. Walker contends that he did not actually possess the weapon at the time of the Swain shooting, and although he was present at the shooting, he was not involved in the planning or execution of the crime.

However, Walker was convicted of conspiracy to distribute cocaine base. Therefore, even though he was not personally involved in the shooting, the enhancement should be applied where the weapon was possessed in furtherance of the conspiracy. See United States v. Kimberlin, 18 F.3d 1156, 1159-60 (4th Cir. 1994). Moreover, a defendant "possesses" a firearm for purposes of USSG § 2D1.1(b)(1) if the weapon was merely "present," unless it is clearly improbable that the weapon was connected with the offense. United States v. Hunter, 19 F.3d 895, 896 (4th Cir. 1994) (enhancement affirmed where defendant could reasonably have foreseen that firearm would be present during drug transaction).

Here, the firearm was present in the car with Walker and his co-conspirators. The firearm was then discharged in order to gain retribution for a past drug-related robbery of Walker. Based on this evidence, we find that the district court did not clearly err in finding that

5

it was reasonably foreseeable to Walker that a firearm would be present.

VI.

Walker next asserts that he was entitled to a reduction for a mitigating role, because he was only a "gopher." However, Walker does not deny that he sold drugs in furtherance of the conspiracy. The district court did not err in finding that a drug seller in a drug conspiracy does not have a minor role. United States v. Brooks , 957 F.2d 1138, 1149 (4th Cir. 1992).

VII.

Relying primarily on United States v. James, 78 F.3d 851 (3d Cir. 1996), cert. denied, ___ U.S. #6D6D 6D#, 65 U.S.L.W. 3259 (U.S. Oct. 7, 1996) (No. 95-9224), and United States v. Munoz-Realpe, 21 F.3d 375 (11th Cir. 1994), Reynolds argues that the Government failed to prove that he possessed crack, as opposed to another form of cocaine base. While Reynolds did not contend at sentencing that the substance he possessed was anything other than crack cocaine, he now argues that he should be resentenced under the powder cocaine guidelines, because he pled guilty to a "cocaine base" conspiracy, and the Government failed to prove that the specific type of "cocaine base" at issue was indeed "crack." USSG § 2D1.1(c), note (D) (specifically noting that "crack" is but one form of "cocaine base").

Reynolds' reliance upon James and Munoz-Realpe is misplaced. James involved an indictment that charged possession of "a detectable amount of cocaine base" and an ambiguous plea colloquy. 78 F.3d at 855-56. Furthermore, the issue was hotly litigated at sentencing, and the district court eschewed any specific factual findings, holding only that "cocaine base means crack for purposes of the guidelines." Id. at 856-57. Faced with the ambiguities in the record and the lack of factual findings by the district court, the Third Circuit found that the Government had failed to prove that the substance at issue was crack cocaine. The court then remanded for resentencing. Id. at 858.

In Munoz-Realpe, the defendant pled guilty to importation of "cocaine." He argued at sentencing that the drug at issue in his case, "co-

6

caine base in liquid form," should be treated as cocaine powder for sentencing purposes. The Eleventh Circuit affirmed the district court's factual finding that the substance was not crack cocaine. 21 F.3d at 376-77 (cocaine base in liquid form requires further processing and can just as easily be made into powder cocaine as crack cocaine).

However, in this case, unlike James and Munoz-Realpe, there is no ambiguity. Reynolds pled guilty to the indictment, charging him with conspiring to distribute "cocaine base, also known as `crack'." Furthermore, Reynolds did not object to the PSR that calculated his sentence based on crack cocaine, except to the extent that he asserted the disparate sentencing standards for powder cocaine and crack cocaine violated the Equal Protection Clause. In so doing, Reynolds demonstrated his understanding that the use of the term "cocaine base" in the PSR referred to "crack," and thereby, waived his present claim by not raising it at sentencing. Finally, the guidelines specifically state that the Sentencing Commission used the term "cocaine base" to refer to "crack." USSG § 2D1.1(c), note (D). Reynolds' plea agreement, plea hearing, PSR, and sentencing hearing are replete with references to cocaine base, and it seems abundantly clear that all parties understood the term "cocaine base" to mean "crack." In the absence of evidence that the substance was another form of cocaine base and absent any contemporaneous objection by Reynolds, his argument must fail.

In sum, there was sufficient evidence in the record to support, by a preponderance of the evidence, that the substance at issue was crack cocaine. Significantly, there was no evidence to the contrary, and no objection by Reynolds to the computation of his sentence. Furthermore, because we have not adopted the holdings of either James or Munoz-Realpe, the district court did not commit plain error by sentencing Reynolds under the crack cocaine guidelines. See United States v. Olano, 507 U.S. 725, 734 (1993) (claim raised for the first time on appeal cannot justify reversal unless the error is "clear under current law").

VIII.

The district court found that Reynolds was responsible for between 150 and 500 grams of crack cocaine. We employ a clearly erroneous

7

standard to review a district court's determination of drug amounts. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990). The Government bears the burden of proving the quantity of drugs involved by a preponderance of the evidence. Id. However, a defendant challenging the amount bears the burden of showing its inaccuracy. United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990). A mere objection to the finding in the PSR is insufficient. Rather, the defendant has an affirmative duty to show that the information in the report is unreliable and articulate the reasons why its facts are untrue or inaccurate. Without such an affirmative showing, the district court is "`free to adopt the findings of the [PSR] without more specific inquiry or explanation.'" Id. (quoting United States v. Mueller, 902 F.2d 336, 346 (5th Cir. 1990)).

Before sentencing, Reynolds withdrew all objections to his PSR save an equal protection argument concerning the sentencing structure for crack cocaine offenses. On appeal, Reynolds fails to specifically articulate the reasons why the amounts attributed to him were erroneous. Rather, he merely contends that the drugs for which he is responsible should be limited to twenty-eight grams, because he admitted to that quantity in plea negotiations. However, such an admission is insufficient to meet Reynolds' affirmative duty to show that the information in the PSR was unreliable and inaccurate. Thus, Reynolds' claim that the Government failed to establish the drug amounts by a preponderance of the evidence is without merit.

Also without merit is Reynolds' claim that the district court failed to make specific findings of fact. Because Reynolds failed to make an affirmative showing of the PSR's inaccuracies, the district court was free to adopt the findings in the PSR.

IX.

Finally, Appellants argue that the district court erred by not departing from the guidelines based on the allegedly disproportionate nature of sentencing guidelines for cocaine base and cocaine powder. We squarely rejected this claim in United States v. Fisher, 58 F.3d 96, 99-100 (4th Cir. 1995) (holding that statute providing higher penalties for cocaine base than cocaine powder did not violate the Equal Protection Clause), cert. denied, ___ U.S. #6D 6D6D#, 64 U.S.L.W. 3270 (U.S. Oct. 10,

8

1995) (95-5923). <u>See also United States v. D'Anjou</u>, 16 F.3d 604, 612 (4th Cir. 1994) (holding that sentencing guidelines equating one unit of cocaine base with 100 units of cocaine powder did not violate equal protection based on racial disparity). Accordingly, Appellants contentions in this regard are frivolous.

X.

For the foregoing reasons, we affirm Appellants' sentences. We deny Reynolds' pro se motions for intervention and for new counsel. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

9