134 F.3d 375
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
United States of America, Plaintiff Appellee,
v.
Kevin Jerome WOODS, Defendant Appellant.
 No. 97-1867.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 17, 1997.
Decided Jan. 28, 1998.
 
 Before Hon. WALTER J. CUMMINGS, Hon. JESSE E. ESCHBACH, Hon. JOHN L. COFFEY, Circuit Judges.
 
 ORDER
 
 1
 A jury found Kevin Woods guilty of conspiring to distribute and possess with intent to distribute "crack" cocaine (a particular form of cocaine base), in violation of 21 U.S.C. §§ 841(a) and 846. On appeal, he contends that his conviction was against the weight of the evidence, in the alternative, he urges that his sentence be reduced, despite his acknowledgment at sentencing that the Presentence Investigative Report ("PSI") relevant conduct findings on which his sentence is based were accurate. We affirm.
 
 I. FACTUAL BACKGROUND
 
 2
 Kevin Woods was arrested during the course of a joint federal-state investigation of a cocaine and crack distribution network. He had sold two eighth-ounce packets of crack to an undercover police officer and a confidential informant ("CI"), the transactions were tape-recorded. Woods was subsequently arrested and taken into custody. In the presence of at least eight law enforcement officials (four of whom were FBI agents). Woods confessed to the manufacture of crack and his involvement since the early 1990s in a crack distribution network.
 
 
 3
 At trial, the evidence against Woods was overwhelming. Five law enforcement officers testified regarding Woods' post-arrest statements; four co-conspirators testified concerning their production of crack and their involvement with Woods in a crack distribution network; the CI and an undercover officer testified and the tape recordings of the transactions involving Woods were also played. In addition, a forensic scientist testified that in his expert opinion, based on a series of scientific tests, the substances purchased from Woods by the undercover officer were "cocaine base," known by its "street name" as "crack cocaine." Woods objected to the introduction of the two samples, stating his belief that they did not conform to the definition of crack provided in the Guidelines.
 
 
 4
 Woods then took the stand in his own defense. He claimed that the only times he had ever been involved in drug transactions were the two times he had been tape recorded selling crack to the undercover police officer, and that he purchased the two batches of crack from a high school acquaintance known only as "Pookie." He also denied making any post-arrest statements to law enforcement officers.
 
 
 5
 The jury found Woods guilty. At sentencing, the court explained in part that the relevant conduct finding in the PSI was limited to six transactions personally conducted by Woods:
 
 
 6
 The Court: The total amount of these quantities of crack cocaine are
 
 
 7
 equivalent to 61.1 grams. Are you objecting to the relevant
 
 
 8
 conduct, the amount of cocaine base being crack cocaine, of 61.6
 
 
 9
 grams that was found by probation?
 
 
 10
 Defendant: No.
 
 
 11
 The court continued the hearing to give Woods an opportunity to file written objections to the PSI. Neither of the two objections subsequently filed by Woods took issue with the relevant conduct finding. At the next sentencing hearing, the following exchange took place:
 
 
 12
 Def Att'y: [W]e do think the government could probably prove and we're
 
 
 13
 unwilling to risk amounts over 61.6 grams. And we feel that the
 
 
 14
 Probation Office, the objection that was filed by my client, the
 
 
 15
 objection we filed did not object to the amount that I filed.
 
 
 16
 The Court: So there's no dispute that the relevant conduct under base offense
 
 
 17
 level involved at least 50 grams, but less than 150 grams of
 
 
 18
 cocaine base?
 
 
 19
 Def Att'y: Yes.
 
 
 20
 The Court: Is that correct, Mr. Woods?
 
 
 21
 Defendant: Yes.
 
 
 22
 After adopting the findings of fact in the PSI without objection from either Woods or the government, the court applied sentence enhancements for obstruction of justice, see U.S.S.G. § 3C1.1, and possession of a firearm in connection with the conspiracy, see U.S.S.G. § 2D1.1(b)(1). Woods was then sentenced to 235 months (the high end of the range) based on his Criminal History Category of I and a final Guideline level of 36.
 
 II. STANDARD OF REVIEW
 
 23
 A defendant who challenges his conviction based on the sufficiency of the evidence must demonstrate that no rational jury could have found him guilty beyond a reasonable doubt. See United States v. Earnest, No. 97-1222, slip op. at 10 (7th Cir. Nov.14, 1997), United States v. Hall, 109 F.3d 1227, 1232 (7th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 153, 139 L.Ed.2d 99 (1997). A reviewing court must examine all of the evidence, and draw all reasonable inferences in the light most favorable to the government. See id.
 
 
 24
 At sentencing, the government must establish the factors that determine the offense level under the Guidelines by a preponderance of the evidence. See United States v. Adams, 125 F.3d 586, 592 (7th Cir.1997), United States v. Garcia, 66 F.3d 851, 856 (7th Cir.1995). The court's interpretation of the Guidelines is a question of law and is reviewed de novo, but its factual findings are reviewed for clear error. See United States v. Abdul, 122 F.3d 477, 478 (7th Cir.1997), cert. denied, (U.S. Dec. 15, 1997) (No. 97-6812). Findings of fact are clearly erroneous and will be reversed on appeal only if they are "without foundation in the evidence." United States v. Monem, 104 F.3d 905, 910 (7th Cir.1997).
 
 III. DISCUSSION
 A. Sufficiency of the Evidence
 
 25
 Woods first argues that he was convicted against the weight of the evidence. He points to the fact that his co-conspirators were testifying pursuant to plea agreements; that the CI was a long-time addict whose testimony was therefore suspect, and finally, that the tape recordings and transcripts of the drug sales to the undercover officer were of such poor quality that they prejudiced the jury.
 
 
 26
 His complaint about the testimony of his co-conspirators and the CI is no more than an invitation to reweigh the evidence and retry his case on appeal, as such, it is not properly directed to this court. See Earnest, No. 97-1222, slip op. at 12, United States v. Griffin, 84 F.3d 912, 927 (7th Cir.), cert. denied sub nom Rux v. United States, --- U.S. ----, 117 S.Ct. 495, 136 L.Ed.2d 387 (1996), and cert. denied sub nom Scurlock v. United States, --- U.S. ----, 117 S.Ct. 536, 136 L.Ed.2d 421 (1996). The jury listened to a parade of witnesses who testified regarding Woods participation in a conspiracy to possess and distribute crack cocaine. See United States v. Taylor, 116 F.3d 269, 274 (7th Cir.1997) (testimony was not incredible simply because it came from felons testifying under plea deals), United States v. House, 110 F.3d 1281, 1286 (7th Cir.) (no error in crediting co-conspirators' testimony), cert. denied sub nom Hughes v. United States, --- U.S. ----, 118 S.Ct. 199, 139 L.Ed.2d 136 (1997). The jury ultimately found these witnesses more believable than Woods, a determination "peculiarly within the province of the jury." United States v. Moore, 25 F.3d 563, 567 (7th Cir.), cert. denied sub nom Anderson v. United States, 513 U.S. 939, 115 S.Ct. 341, 130 L.Ed.2d 297 (1994); see also Griffin, 84 F.3d at 927. Nothing in the record suggests the sort of extraordinary circumstances that would warrant appellate review of the district court's credibility determinations. See Moore, 25 F.3d at 567; see also Hall, 109 F.3d at 1233.
 
 
 27
 Woods' argument regarding the poor quality of the tapes of the drug transactions is similarly unavailing. The effect of a particular piece of evidence on the outcome of a trial must be evaluated in light of all of the evidence actually presented, see United States v. Silva, 71 F.3d 667, 670 (7th Cir.1995), and is unfairly prejudicial only if it induces the jury to decide the case on improper grounds, see United States v. Berry, 92 F.3d 597, 600 (7th Cir.1996); United States v. Pulido, 69 F.3d 192, 201 (7th Cir.1995). Whether or not the tapes were unclear, Woods admitted on the witness stand both his involvement in the crack transactions that were taped and his belief that what he was selling was crack. The CI and the undercover officer also testified regarding the sales. While Woods complains about the use of transcripts, the jury was instructed that they were "not evidence," and that if they noted discrepancies between what they heard and what they read, "what you hear is controlling." The transcripts were promptly collected after the tapes were played. See Howard, 80 F.3d at 1197-98; see also United States v. Magana, 118 F.3d 1173, 1184 (7th Cir.1997). Whatever information Woods believes was contained in the tapes that misled or prejudiced the jury was fully corroborated by other witnesses including Woods.
 
 
 28
 Viewing all of the evidence in the light most favorable to the government, a rational jury "could, would, and should have found" Woods guilty beyond a reasonable doubt. United States v. Hickok, 77 F.3d 992, 1002 (7th Cir.), cert. denied, 517 U.S. 1200, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996). There is no basis for overturning the jury's verdict.
 
 B. Sentencing Issues
 
 29
 The Notes to the Drug Quantity Table in the Sentencing Guidelines explain, " 'Cocaine base,' for the purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate ...." U.S.S.G. § 2D1.1(c)(D) (1997). The Sentencing Guidelines provide a steep enhancement for offenses involving crack that does not apply to other forms of cocaine or cocaine base. See id.; Adams, 125 F.3d at 591-92, United States v. James, 78 F.3d 851, 855-58 (3d Cir.), cert. denied, 519 U.S. 844, 117 S.Ct. 128, 136 L.Ed.2d 77 (1996), United States v. Munoz-Realpe, 21 F.3d 375, 377 (11th Cir.1994).
 
 
 30
 At argument, Woods' attorney correctly urged that if this court's recent holding in United States v. Adams, 125 F.3d 586 (7th Cir.1997), "means anything at all," the government must prove that the substance on which his sentence rests is crack and not some other form of cocaine base, see, e.g., id. at 591-92, Earnest, No. 97-1222, slip op. at 17-19. Despite his objection at trial to the admission of the crack purchased from the undercover agent, Woods is foreclosed from raising this argument on appeal because, at sentencing, he waived his right to raise it. See Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), see also United States v. Mankiewicz, 122 F.3d 399, 403 n. 1 (7th Cir.1997); United States v. Lakich, 23 F.3d 1203, 1207 (7th Cir.1994). Where there is a valid waiver, there is no error for the appellate court to correct. See United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); United States v. Davis, 121 F.3d 335, 338 (7th Cir.1997); Lakich, 23 F.3d at 1207.
 
 
 31
 At the first sentencing colloquy and upon inquiry by the court, Woods specifically stated that he did not object to "the amount of cocaine base being crack cocaine, of 61.6 grams that was found by probation." His written objections to the PSI not only fail to question the relevant conduct finding, but Woods affirmatively ratified the finding at his final sentencing hearing. See Davis, 121 F.3d at 338. Woods was also informed by the court of the basis on which his sentence was being calculated. See Howard, 80 F.3d at 1204. At no time did he object to or challenge the court's characterization of the substance as crack. See Earnest, No. 97-1222, slip op. at 4, 22; Adams, 125 F.3d at 591-92. Neither does the record suggest any uncertainty in Woods' mind about the nature of the substance on which his sentence would be based. Compare Hall, 109 F.3d at 1236 ("Witness after witness testified that the substance defendants distributed was 'crack." '), with James, 78 F.3d at 856-58 (defendant's acknowledgement following the government's "casual reference to crack" at sentencing did not constitute a knowing and voluntary admission that the cocaine base was crack). The testimony at trial and the relevant documents, including the indictment and the PSI, refer to "crack cocaine," and Woods himself admitted during cross-examination his belief that what he sold to the undercover agent was crack.
 
 
 32
 By any standards, Woods has waived his right to contest the relevant conduct finding on which his sentence was based. There is thus no reason to disturb the jury's verdict or the district court's sentence.
 
 
 33
 AFFIRMED.